MINERS' & CITIZENS' BANK v. MAXINE MINING COMPANY.

Opinion delivered December 5, 1921.

CORPORATIONS—INSOLVENCY—PREFERENCE OF LABORERS.—Under Craw-
ford & Moses' Dig. §§ 1798-1801, prohibiting preferences by at-
tachment, confession of judgment or otherwise among creditors of
insolvent corporations, except for wages and salaries of laborers
and employees, and providing that such preferences shall be set
aside where complaint is made within 90 days after the same is
given or sought to be obtained, *held* that where laborers and em-
ployees of an insolvent corporation intervened in an attachment
suit brought by a general creditor within 90 days from the levy
of the attachment and asked that their claims be preferred
to that of the attaching creditor, it was proper to set aside the
attachment lien and to enforce the preference of the interveners.

Appeal from Marion Chancery Court; *B. F. McMa-
han,* Chancellor; affirmed.

STATEMENT OF FACTS.

On the 20th of September, 1917, appellant filed a
suit in equity against appellees in which it asked for
judgment on certain notes and for a foreclosure of cer-
tain mortgages given to secure the same.

The complaint also alleged grounds for attach-
ment and asked that a general attachment be issued and
levied on certain property belonging to the Yellow Rose
Mining Company, one of the appellees.

On the 20th day of September, 1917, the writ of
attachment was duly issued and levied by the sheriff
upon certain personal and real property belonging to
the Yellow Rose Mining Company. On the 13th day
of October, 1917, appellant filed in the chancery court
an application for a receiver for the Yellow Rose Min-
ing Company. A receiver was duly appointed and took
charge of the property of said company.

On the 25th day of October, 1917, the Bank of Yell-
ville, the Silver Hollow Mining Company, and W. S.
Petit, as trustee in bankruptcy of the Maxine Mining
Company, filed an intervention in the chancery suit
brought by appellant against appellees as above men-

tioned. They state that they are creditors of the Yellow Rose Mining Company and ask judgment against said company in the sum of $1940.34. They state that the Yellow Rose Mining Company, in addition to being indebted to them, owes to its workmen and laborers for labor performed about $3,000. They allege that laborers and mechanics' liens have been filed against the property of said Yellow Rose Mining Company, and that said company owes other large sums for supplies which it is wholly unable to pay. They further allege that said company has ceased operations and has abandoned its property in this State. They allege that said corporation, the Yellow Rose Mining Company, is wholly insolvent, and that its officers are permitting its assets to become wasted.

The prayer of the interveners is that the affairs and business of the Yellow Rose Mining Company in this State be wound up, and its property and holdings be ordered sold and distributed as provided by law.

In October, 1917, numerous laborers filed suit in the justice court for their wages and obtained judgment against the Yellow Rose Mining Company. They also presented their judgments and claims to the receiver of said company for allowance as preferred claims under the statute.

On the 10th day of November, 1917, the receiver filed an inventory of the assets of the Yellow Rose Mining Company. On the 6th day of December, 1917, the receiver of the Yellow Rose Mining Company filed a report of all the claims which had been presented to him by the laborers of said company and recommended to the court that the amounts due the laborers be allowed as preferred claims.

The record shows that the Yellow Rose Mining Company was insolvent at the time appellant had the attachment issued and also at the time the interveners filed their petition in the chancery court for the purpose of winding up the affairs of said corporation and

distributing the assets among the creditors after paying the wages and salaries due its laborers and employees.

The court found that the Yellow Rose Mining Company was insolvent, and that the laborers of said company were entitled to be preferred in their claims, and set aside the preference obtained by appellant from its attachment.

The property of said company was ordered sold by the receiver and the proceeds to be distributed among the preferred claimants. A decree was entered accordingly. This did not leave sufficient assets to pay the appellant. Hence it has duly prosecuted an appeal to this court.

*Williams & Seawel,* for appellant.

The attachment lien was fixed by the levy of the attachment on the property. C. & M. § 512. When the receiver was appointed, he took the property subject to valid liens against it at the time of his appointment. 97 Ark. 534.

The intervention of the Bank of Yellville *et al.* within 90 days from the levy of the attachment, did not operate to dissolve same. See C. & M. Dig., §§ 1798, 1800, inclusive. No complaint was made by any creditor or stockholder within 90 days of the preference secured by the attachment, and thereafter the attachment lien became fixed absolutely, and it was not within the power of the chancery court to vacate or set it aside. 67 Ark. 111; 109 Ark. 584; 114 Ark. 26; *Cole* v. *Bloyd,* 147 Ark. 396.

The only right employees and laborers have under the statute is to have their wages paid out of the funds in the hands of the receiver upon which no lien exists. 97 Ark. 534.

*G. W. Rogers,* for appellee.

Appellant lost its lien acquired by attachment when it failed to have the attachment sustained when it took judgment. 80 Pac. 422; 67 Ark. 261; 135 Pac. 885.

The statutes give laborers preferred claims for their wages. C. & M. Dig., §§ 1798-1800; 96 Ark. 556; 64 Ark. 132; 7 R. C. L. 768; 26 Cyc. 1072-H; 34 Cyc. 349-III.

The preference given laborers by the statute is superior to a lien acquired by attachment. While this question has not been decided by our court, it has been so held by the Missouri courts under a similar statute. 65 Mo. App. 329; 117 U. S. 434; 106 U. S. 286; 97 U. S. 146; 103 N. Y. 245; 103 Mo. App. 398; 138 Mo. 430.

Attachment liens do not affect prior rights of third parties. 58 Ark. 252. An attaching creditor acquires no greater right in attached property than defendant has at the time of attachment. 3 Pac. 647.

The appointment of a receiver does not affect the vested rights of any party, but merely changes the remedy.

HART, J. (after stating the facts). The decree of the chancellor was correct. Sections 1798-1801 of Crawford & Moses' Digest provide for the procedure for the winding up of the affairs of insolvent corporations and the distribution of their assets to their creditors.

Sec. 1798 provides that no preference shall be allowed among the creditors of insolvent corporations except for wages and salaries of laborers and employees

Sec. 1799 provides that any creditor of such insolvent corporation may institute proceedings in the chancery court for the winding up of its affairs and the distribution of its assets among the creditors after paying the wages and salaries due laborers and employees.

Sec. 1800 provides that every preference obtained or sought to be obtained by any creditor of such corporation, whether by attachment, confession of judgment or otherwise, shall be set aside by the chancery court, and such creditor shall be required to relinquish his preference and accept his *pro rata* share in the distribution of the assets of such corporation, provided

that no such preference shall be set aside unless complaint thereof be made within ninety days after the same is given or sought to be obtained.

The attachment in favor of appellant was issued and levied on the 20th day of September, 1917. The laborers and employees of the company filed their claims with the receiver within three months thereafter, and asked that the preference by attachment obtained by appellant be set aside.

The receiver allowed the claims of the laborers and employees of the company and classed them as preferred claims. He made his report thereof on the 6th day of December, 1917. This all occurred within three months after the preference by attachment was obtained by the appellant.

Hence the chancery court correctly held that the preference sought to be obtained by appellant by the issue and levy of the attachment should be set aside.

A decree was entered accordingly, and it follows that the decree must be affirmed.